OPINION
{¶ 1} Relator Ray Blackburn ("relator") filed this original action in mandamus requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him permanent total disability compensation.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, who issued a decision, including findings of fact and conclusions of law. (Attached hereto as Appendix A.) The magistrate concluded the commission did not abuse its discretion by granting reconsideration, the commission did not abuse its discretion by finding relator voluntarily retired and the commission did not abuse its discretion by concluding relator was not permanently and totally disabled. Accordingly, it was the magistrate's decision this court deny relator's request for a writ of mandamus.
 {¶ 3} Relator filed an objection to the decision of the magistrate arguing the evidence did not support the magistrate's findings. Relator contends the commission should not have reconsidered this matter, instead, it should have sought clarification of the report at issue. Moreover, relator asserts the evidence clearly reveals he did not voluntarily retire. To the contrary, the evidence supports the finding he was forced from his employment because of his injury. Further, relator maintains the magistrate failed to address the issue of how he could be entitled to receive permanent total disability compensation if he had voluntarily retired. Additionally, the magistrate did not address how the commission addressed the merits when it concluded he voluntarily retired.
 {¶ 4} Following independent review, pursuant to Civ.R. 53, we find the magistrate properly determined the pertinent facts and applied the salient law to them. Relator's objection to the magistrate's decision are overruled and we adopt the decision of the magistrate as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, the requested writ of mandamus is denied.
Objection overruled; writ denied.
Petree and Sadler, JJ., concur.
 IN MANDAMUS {¶ 5} Relator, Ray Blackburn, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied his application for permanent total disability ("PTD") compensation and ordering the commission to find that he is entitled to that compensation.
Findings of Fact
 {¶ 6} 1. Relator has sustained four separate work-related injuries and his claims have been allowed as follows:
 {¶ 7} "* * * [C]laim 99-458563 has been allowed for: sprain right ring finger; degenerative joint disease right fingers; degenerative joint disease right fingers (3rd and 4th
fingers).
 {¶ 8} "Claim 96-458563 has been allowed for: adjustment disorder with anxiety; sprain lumbar region.
 {¶ 9} "Claim 99-614615 has been allowed for: bilateral mild-to-severe sensori-neural hearing loss.
 {¶ 10} "Claim MT884367 has been allowed for: contusion of right hand"
 {¶ 11} 2. Relator retired in 1997 at age 65. In 1998, relator's claim was addi-tionally allowed for the psychological condition "adjustment disorder with anxiety." Temporary total disability compensation was paid to relator based solely upon the allowed psychiatric condition until November 2000 when it was terminated based upon a finding that the condition had reached maximum medical improvement ("MMI").
 {¶ 12} 3. On August 3, 2001, relator filed an application for PTD compensation based upon the July 24, 2001 report of relator's attending psychologist, Michael G. Drown, Ph.D. Dr. Drown opined that "[c]onsidering his age, education, lack of marketable skills, diminished overall adaptiveness, and his work injury, it is within reasonable certainty that his psychiatric disability taking in the whole body is permanent total."
 {¶ 13} 4. Relator was also examined by Mark Querry, Ph.D., who issued a report dated November 15, 2000. Dr. Querry opined that relator had reached MMI, that he could not return to his former position of employment, but that he could return to other employment with the following restrictions:
 {¶ 14} "* * * A summary of functional limitations sustained by this individual are poor concentration, isolation, anxiety and panic episodes, and feelings of nervousness with hyper vigilance. The type of work recommended for the injured worker to perform would be a job where the claimant could think in terms of concrete ideas without having to analyze or extrapolate in an abstract way, working in an independent work station so he would not have to worry about coworkers per say, a soothing work environment, low to moderate noise levels, and a job within a company or organization conducive to recognizing the social needs of employees and offering emotional support to this individual."
 {¶ 15} 5. Relator was also examined by William L. Licklider, M.D., on February 12, 2002. In his February 15, 2002 report, Dr. Licklider opined that relator had reached MMI, that his hearing disability without hearing aids was 42 percent and that his disability with hearing aids was 12 percent. Dr. Licklider concluded that relator was capable of physical work activity in the medium strength category.
 {¶ 16} 6. Relator was also examined by Dr. Earl F. Greer who issued a report dated February 14, 2002. Dr. Greer opined that relator had reached MMI, assessed a 15 percent permanent emotional impairment and concluded that, based upon his emotional impairment alone, relator could return to his former position of employment or any other employment for which he would be otherwise qualified. Dr. Greer concluded that work would be therapeutic, enhancing relator's self-worth, and that significant unstructured time would be psychologically unhealthy.
 {¶ 17} 7. Relator was also examined by James Rutherford, M.D., who issued a report dated February 21, 2002. Dr. Rutherford concluded that relator had reached MMI, assessed an 11 percent whole person impairment, and concluded that relator was capable of physical work activity limited to sedentary work activities.
 {¶ 18} 8. Relator was also examined by Richard R. Clary, M.D., who issued a report dated October 3, 2001. Dr. Clary opined that relator had reached MMI, that he suffers a ten percent permanent partial impairment due to his psychological condition and his psychiatric symptoms are not work prohibitive and do not cause permanent total disability.
 {¶ 19} 9. An employability assessment report was prepared by John E. Sterba, M.A., LPCC, CRC, and dated February 17, 2002. Based upon the medical report of Dr. Drown, Mr. Sterba indicated that relator was not employable. Based upon Mr. Sterba's mistaken conclusion that Dr. Querry had limited relator to jobs with "no noise," Mr. Sterba also indicated that there were no jobs relator could perform. However, based upon the reports of Drs. Rutherford, Greer, and Licklider, and considering that Dr. Rutherford more strictly limited relator's abilities to sedentary work, Mr. Sterba indicated that relator could perform the following jobs:
 {¶ 20} "After a period of OJT or short term training: inventory clerk, customer service representative, survey worker, machine stoppage frequency checker, expeditor, and maintenance dispatcher."
 {¶ 21} 10. Relator's application was heard before a staff hearing officer ("SHO") on May 28, 2002, and resulted in an order granting that compensation. The SHO relied upon the report of Dr. Drown for the start date of disability. The SHO then relied upon the medical report of Dr. Querry and Mr. Sterba's conclusion that there were no jobs available with the limitations imposed by Dr. Querry. Based upon the reports of Dr. Querry and Mr. Sterba, the SHO concluded that relator was permanently and totally impaired due to the allowed adjustment disorder with anxiety without reference to any disability factors.
 {¶ 22} 11. The employer filed a motion for reconsideration on the basis that the medical report of Dr. Querry does not support the SHO finding of PTD compensation without analysis of the relator's vocational factors.
 {¶ 23} 12. By order dated November 21, 2002, the commission granted the employer's request for reconsideration and took continuing jurisdiction for the following reasons:
 {¶ 24} "The Industrial Commission finds that the Staff Hearing Officer, in an order dated 05/28/2002, relied on a portion of a vocational report that contained a factual error. Specifically, on page 2, item II (5), Mr. Sterba lists Dr. Querry's limitation as `no noise.' Consequently, Mr. Sterba used an incorrect limitation in the section related to Dr. Querry. Based on this clear mistake of fact, the Industrial Commission finds it has continuing jurisdiction to address the injured worker's application for permanent total disability."
 {¶ 25} Thereafter, the commission relied upon the reports of Drs. Licklider, Greer, Clary, and Rutherford, and concluded that relator was capable of performing sedentary work activities with no prohibition to work as a result of the allowed physical conditions. Because the commission was not relying upon the report of Dr. Querry, the commission found that Mr. Sterba's vocational report was reliable. The commission concluded as follows:
 {¶ 26} "In general, Mr. Sterba notes that the injured worker's age is an obstacle to re-employment. He reports that the injured worker's education may require some refresher training and possibly computer literacy skills to be truly competitive in today's labor market. The injured worker has held various different types of employment. Mr. Sterba finds that most of the skills performed in these positions would serve him well in future employment. Based on the above medical capabilities, Mr. Sterba identifies occupations the injured worker could perform following appropriate academic remediation. Such jobs include: inventory clerk, customer service representative, survey worker and expeditor.
 {¶ 27} "It is the finding of the Industrial Commission that the injured worker's age would be a barrier to re-employment, however, age alone would not prevent a return to work. The injured worker has an 8th grade education and, per his application, he has the ability to read and write and do basic math. The Industrial Commission finds that the injured worker's education and ability to read and write is sufficient to learn the skills necessary for entry-level sedentary work. Concerning his work history, the injured worker has over a thirty-five-year history of performing a variety of jobs. He has demonstrated the ability to learn and adapt in the work setting, and to maintain employment for an extended period. The Industrial Commission finds that the injured worker's varied work history would be a positive factor concerning future employment. Consequently, the Industrial Commission concludes the injured worker, based on his age, education and work history, has the ability to learn the skills necessary to obtain and engage in entry-level sedentary work.
 {¶ 28} "In conclusion, it is the order of the Industrial Commission that the IC-2 application, filed 08/03/2001, is denied as the injured worker voluntarily retired from employment. In the alternative, the Industrial Commission orders that the application is denied for the reason that based upon the injured worker's medical restrictions, as well as his age, education and work history, he is capable of learning the skills necessary to engage in sustained remunerative employment."
 {¶ 29} 13. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law
 {¶ 30} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. Stateex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record.State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewisv. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder.State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 31} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus.Comm. (1994), 69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephensonv. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v.Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v.Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 32} Relator raises three arguments: (1) the commission abused its discretion by granting reconsideration; (2) the commission abused its discretion by finding that relator had voluntarily retired; and (3) the commission abused its discretion by concluding that relator was not permanently and totally disabled. For the reasons that follow, this magistrate disagrees.
 {¶ 33} Pursuant to R.C. 4123.52, "[t]he jurisdiction of the industrial commission and the authority of the administrator of workers' compensation over each case is continuing, and the commission may make such modification or change with respect to former findings or orders with respect thereto, as, in its opinion is justified."
 {¶ 34} In State ex rel. B C Machine Co. v. Indus. Comm.
(1992), 65 Ohio St.3d 538, the court examined the judicially-carved circumstances under which continuing jurisdiction may be exercised and stated as follows:
 {¶ 35} "R.C. 4123.52 contains a broad grant of authority. However, we are aware that the commission's continuing jurisdiction is not unlimited. See, e.g., State ex rel. Gatlinv. Yellow Freight System, Inc. (1985), 18 Ohio St.3d 246 * * * (commission has inherent power to reconsider its order for a reasonable period of time absent statutory or administrative restrictions); State ex rel. Cuyahoga Hts. Bd. of Edn. v.Johnston (1979), 58 Ohio St.2d 132 * * * (just cause for modification of a prior order includes new and changed conditions); State ex rel. Weimer v. Indus. Comm. (1980),62 Ohio St.2d 159 * * * (continuing jurisdiction exists when prior order is clearly a mistake of fact); State ex rel. Kilgore v.Indus. Comm. (1930), 123 Ohio St. 164 * * * (commission has continuing jurisdiction in cases involving fraud); State ex rel.Manns v. Indus. Comm. (1988), 39 Ohio St.3d 188 * * * (an error by an inferior tribunal is a sufficient reason to invoke continuing jurisdiction); and State ex rel. Saunders v. MetalContainer Corp. (1990), 52 Ohio St.3d 85, 86 * * * (mistake must be `sufficient to invoke the continuing jurisdiction provisions of R.C. 4123.52'). Today, we expand the list set forth above and hold that the Industrial Commission has the authority pursuant to R.C. 4123.52 to modify a prior order that is clearly a mistake of law. In so holding, we note that the court of appeals ably recognized that: `* * * [W]here it is clear that this court would issue a writ of mandamus ordering the Industrial Commission to vacate, modify or change a decision or order, the respondent Industrial Commission neither exceeds its authority or jurisdiction nor acts unlawfully nor abuses its discretion if it proceeds to make such correction that this court would clearly have ordered without awaiting either an action being filed in this court or a decision from this court if one be filed.'" Id. at 541-542.
 {¶ 36} In the present case, the commission exercised its continuing jurisdiction based upon a clear mistake of fact which the commission identified in its order. The commission noted that the SHO had relied upon the vocational report of Mr. Sterba who had indeed mistakenly believed that Dr. Querry had limited relator to a job where there was no noise whatsoever. Because the prior SHO decision was based exclusively upon the reports of Dr. Querry and Mr. Sterba, without any analysis of the non-medical vocational factors, this magistrate cannot say that the commission abused its discretion by exercising its continuing jurisdiction in this matter. Relator argues that, at most, the commission should have asked Mr. Sterba to clarify his report based upon an accurate reading of Dr. Querry's report. This would have been one option available to the commission after it decided to exercise its continuing jurisdiction but it would not have been the only option. As such, this argument of relator is not well-taken.
 {¶ 37} Relator also contends that the commission abused its discretion by finding that he had voluntarily retired from his former position of employment. The commission specifically found that relator had resumed his usual work activities after his last industrial accident and that he had performed in that capacity for approximately 15 months before he retired. The commission concluded that there was no medical evidence that relator was permanently and totally disabled and incapable of performing his job at the time that he took his retirement. The record contains a C-84 from Dr. Beverly dated March 14, 1996, wherein he referred relator to physical therapy and placed him on a 20 pound lifting restriction for six weeks. The record also contains the February 27, 1997 report of Dr. Ward who noted that relator planned to retire in April and that the best thing to do was to see how relator did after he retired and was able to avoid heavy lifting. Clearly, the record is indeed devoid of any "medical" evidence linking relator's retirement to his allowed conditions. Relator testified that the younger workers had been helping him with the heavy lifting and that, because of that help, he was able to make it to age 65 before he retired. He did indicate though that if he would have been able, he would have kept working so his retirement would have been greater.
 {¶ 38} It is understood that the determination of disputed facts is within the final jurisdiction of the commission and that this court's job is not to reevaluate and reweigh the evidence. Instead, questions of credibility and the weight to be given evidence are clearly within the commission's discretionary powers of fact-finding and it is immaterial whether other evidence, even if greater in quality and/or quantity supports a decision contrary to the commission's. See State ex rel. Pass v. C.S.T.Extraction Co. (1996), 74 Ohio St.3d 373. The commission is required to only state what evidence is relied upon and to provide a brief explanation concerning why the claimant is or is not entitled to the requested compensation. Noll, supra. The commission did so in the present case and this argument of relator is not well taken.
 {¶ 39} Last, relator contends that the commission abused its discretion by finding that relator is not permanently and totally disabled. The commission specifically relied upon the reports of Drs. Greer, Clary, Licklider, and Rutherford, and concluded that relator was capable of performing sedentary work activities. The commission then considered the non-medical vocational factors and concluded that relator's age, while a barrier, was not an absolute bar to reemployment. Furthermore, the commission found that relator's education plus his ability to read and write was sufficient for him to learn the skills necessary for entry level sedentary work. Last, the commission determined that relator's work history demonstrated that he had the ability to learn and adapt in the work setting and to maintain employment for an extended period of time. The commission's analysis meets the requirements of Noll and is sufficient. Furthermore, there is no error on the part of the commission to provide alternate theories under which relator in this case was deemed not entitled to PTD compensation. Although relator contends that, if the commission concludes that a claimant has voluntarily retired from their employment, the commission is precluded from providing an alternate theory to deny benefits, relator is unable to provide any case law to support that argument because there is none. In fact, it has become quite customary for the commission to provide alternate theories in their orders. As such, this argument of relator is not well taken.
 {¶ 40} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion in denying his application for PTD compensation and this court should deny relator's request for a writ of mandamus.